UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE WILLIAMS,

                Plaintiff,        Civil Action No. 18-13370
                                              Honorable Mark A. Goldsmith
v.                                                 Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 18]

Plaintiff Andre Williams ("Williams") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #14, #18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Williams is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, Williams' Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.     REPORT

### A.     Background

Williams was 38 years old at the time of his application date of February 26, 2016, and at 6'5" tall weighed 250-295 pounds during the relevant time period. (Tr. 37, 141, 145). He attended high school but did not graduate or earn a GED. (Tr. 37, 146). He worked intermittently as a temporary laborer and disc jockey until August 2015, when his medical conditions allegedly made it too difficult for him to perform his job duties. (Tr. 37-38, 145-46). He now alleges disability primarily as a result of back pain, high blood pressure, and diabetes. (Tr. 23, 39, 145).

After Williams' application for SSI was denied at the initial level on April 22, 2016 (Tr. 70-73), he timely requested an administrative hearing, which was held on October 4, 2017, before ALJ B. Lloyd Blair (Tr. 32-58). Williams, who was represented by attorney Jason Mohler, testified at the hearing, as did vocational expert Annette Holder. (*Id.*). On January 22, 2018, the ALJ issued a written decision finding that Williams is not disabled under the Act. (Tr. 20-28). On August 28, 2018, the Appeals Council denied review. (Tr. 1-6). Williams timely filed for judicial review of the final decision on October 29, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Williams' medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the

Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Williams is not disabled under the Act. At Step One, the ALJ found that Williams has not engaged in substantial gainful activity since February 26, 2016 (the application date). (Tr. 22). At Step Two, the ALJ found that he has the severe impairment of status post lumbar surgery for L3-L4[1] disc herniation and lumbar radiculopathy. (*Id.*). At Step Three, the ALJ found that Williams' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Williams' residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations: requires a sit/stand option that allows him to alternate between sitting and standing every thirty minutes; cannot climb ladders, ropes, or scaffolds; can only occasionally stoop, kneel, crouch, crawl, balance, and climb ramps or stairs; should avoid walking on uneven surfaces; and can only occasionally bend, twist, or turn at the waist. (*Id.*).

---

[1] Although the ALJ incorrectly noted in his Step Two analysis that Williams had undergone surgery for "L4-5 herniation" (Tr. 22), it appears that this was merely a typographical error, as later in the decision, he repeatedly discussed evidence of herniation and surgery at *L3-L4* (Tr. 25).

At Step Four, the ALJ found that Williams has no past relevant work. (Tr. 27). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Williams is capable of performing the jobs of assembler (110,000 jobs nationally), sorter (84,000 jobs), and packer (88,000 jobs). (Tr. 27-28). As a result, the ALJ concluded that Williams is not disabled under the Act. (Tr. 28).

    **C.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In his motion for summary judgment, Williams argues that the ALJ's Step Three finding – that his back impairment does not meet or medically equal Listing 1.04(A) – is not supported by substantial evidence.[2] (Doc. #14 at 18-22). For the reasons set forth below, the Court finds merit to this argument.

At Step Two, the ALJ found, in relevant part, that Williams has the severe impairment of status post lumbar surgery for L3-L4 disc herniation and lumbar

---

[2] Williams also argues that the ALJ erred in (1) failing to obtain an expert opinion as to whether his back impairment medically equals Listing 1.04(A); (2) finding his diabetes and high blood pressure non-severe at Step Two; (3) and formulating his RFC. (Doc. #14 at 22-29). Because the Court is recommending remand on other grounds, it declines to address the merits of these arguments. Nonetheless, if, on remand, the ALJ determines that Williams' back impairment does not meet Listing 1.04(A)'s requirements, the ALJ should ensure that proper consideration is given to each of these issues as well.

radiculopathy. (Tr. 22). Then, at Step Three, with respect to this impairment, the ALJ said only:

> The claimant's impairment does not meet or equal listing *1.04, Disorders of the Spine*, because the required evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis is not present.

(Tr. 23 (emphasis in original)).

Williams now argues that the ALJ erred at Step Three in failing to properly analyze or explain why his back impairment does not meet or medically equal Listing 1.04(A). (Doc. #14 at 18-22). He recognizes, however, that this Court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. (*Id.* at 20-21 (citing *Allen v. Comm'r of Soc. Sec.*, No. 16-170, 2016 WL 6471092, at *3 (W.D. Mich. Nov. 2, 2016)). Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 861 (E.D. Mich. 2012)) (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (internal quotations omitted) (emphasis in original). Here, for the reasons discussed below, the ALJ failed to adequately explain why Williams does not meet or medically equal Listing 1.04(A), and the Court cannot find this error harmless.

In order for Williams to meet the criteria of Listing 1.04(A), he must show that he has a disorder of the spine (*e.g.*, herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis) with:

7

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A). It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, thorough consideration of the objective medical evidence leaves open at least the possibility that Williams meets Listing 1.04(A)'s requirements.

By way of background, Williams presented to the emergency room at Oakwood Heritage Hospital with back pain on July 28, 2015, after the floor he had been standing on "collapsed" and he fell onto his back. (Tr. 248). He had tenderness and decreased range of motion, but x-rays revealed no fracture. (Tr. 252-53). On August 21, 2015, with continued pain, he underwent a CT of the lumbar spine, which showed multilevel degenerative changes, superimposed upon congenital shortening of the pedicles, which produced spinal canal and foraminal narrowing, most notable from L3-L4 through L5-S1.

(Tr. 263-64). Additionally, calcification/ossification of the right side of the ligamentum flavum at L5-S1 contributed to produce severe spinal canal narrowing at that level. (*Id.*).

Williams returned to the emergency room several times in September 2015, complaining of back pain radiating down the right leg, numbness, tingling, and at times a loss of bladder control. (Tr. 266, 269, 285, 292, 299, 302). On September 15, 2015, he presented to the emergency room at Oakwood Heritage Hospital with similar complaints; because he had a neurosurgery appointment scheduled for later that day with Prashant Kelkar, D.O., however, he was transferred to Providence Hospital for further evaluation and testing. (Tr. 213, 321, 323). A lumbar myelogram was performed that day, which showed severe narrowing of the thecal sac at L3-L4 with mild impression at L4-L5. (Tr. 237). Williams was then sent for a CT of his lumbar spine with contrast, which showed L3-L4 disc extrusion with superior migration causing severe canal stenosis and severe narrowing of the right lateral recess, and severe canal stenosis at L5-S1 secondary to a combination of probable disc herniation and facet hypertrophy. (Tr. 234). Thus, on September 18, 2015, Williams underwent back surgery, including a bilateral laminectomy at L3-L4, transpedicular decompression at L3-L4, and posterior lumbar interbody fusion at L3-L4. (Tr. 209-11). During the surgery, Dr. Kelkar specifically noted that a "disc fragment was found to be compressing the nerve root and displacing the nerve root" at the L3-L4 level. (Tr. 210).

Following this surgery, Williams returned to the emergency room at Oakwood Heritage Hospital on October 10, 2015. (Tr. 326). He indicated that he had fallen two days earlier, and his medications were no longer controlling his pain. (Tr. 329). On

9

examination, he had reduced strength and decreased pinprick sensation. (Tr. 330). Williams underwent another CT of his lumbar spine, which showed a left paracentral disc protrusion at L3-L4, effacing the left lateral recess; disc bulge at L4-L5, effacing the ventral thecal sac; facet arthropathy at L4-L5 and L5-S1; and bilateral neural foraminal stenosis at L4-L5 and L5-S1. (Tr. 334).

Williams then followed up with his surgeon's office on October 13, 2015. (Tr. 369). X-rays performed that day demonstrated that the hardware was in good positioning, and it was expected that Williams would "improve further with additional time to recover." (Tr. 370). Additional x-rays taken on July 19, 2016 also revealed "no complicated process," and Dr. Kelkar indicated at that time that, overall, he was "pleased with the patient's outcome after surgery." (Tr. 366).

Only a month later, however, on November 15, 2016, Williams returned to see Dr. Kelkar, reporting that he had fallen two weeks earlier and was experiencing back pain radiating down both legs. (Tr. 361). X-rays showed "some bone growth in the disc space"; Dr. Kelkar diagnosed Williams with lumbosacral radiculopathy and recommended that he undergo both a CT and MRI of the lumbar spine.[3] (Tr. 362). The CT performed on January 28, 2017 showed retrolisthesis, disc bulge, and moderate facet hypertrophy at L4-L5, combining with prominent epidural fat to cause moderate canal stenosis with moderate bilateral neural foraminal narrowing, as well as mild disc bulge and moderate facet hypertrophy at L5-S1, causing mild central canal stenosis and mild

---

[3] As the ALJ noted, Williams was unable to undergo an MRI because he has retained bullet fragments in his body from a past gunshot wound. (Tr. 25, 302).

10

bilateral neural foraminal narrowing. (Tr. 347). Additionally, the CT showed "[p]ersistent lucency at the L3-L4 disc space [that was] suspicious for pseudoarthrosis" (i.e., non-union). (*Id.*). Dr. Kelkar observed this "apparent bridging bone growing across the disc space" and recommended a series of lumbar epidural steroid injections. (Tr. 356).

At a follow-up visit to Dr. Kelkar on February 28, 2017, Williams continued to complain of back pain and bilateral leg pain. (Tr. 353). Dr. Kelkar ordered a CT myelogram of Williams' lumbar spine and recommended he go to a pain clinic for management and treatment of his ongoing pain. (Tr. 354). There is no indication in the record as to whether this lumbar myelogram was performed, but Williams next returned to see Dr. Kelkar on May 2, 2017. (Tr. 349). At that time, Dr. Kelkar ordered an EMG of Williams' left lower extremity "in order to better delineate the pathology" of his lumbosacral radiculopathy, and referred Williams to Jeffrey Najor, M.D. for chronic pain management. (Tr. 350). Again, however, there is no record of an EMG in the record.

Considering all of these facts, the Court finds that the record contains evidence that at least arguably satisfies each of the criteria of Listing 1.04(A), and it is not clear why the ALJ reached a contrary conclusion. The ALJ concluded that Williams suffers from the severe impairment of "status post lumbar surgery for [L3-L4] disc herniation and lumbar radiculopat[h]y"; and, indeed, there is evidence of lumbar radiculopathy continuing even after his 2015 back surgery. (Tr. 22; *see also* Tr. 210, 221, 350, 353, 362). "Lumbar radiculopathy is typically caused by a compression of the spinal nerve root." *See* https://www.emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html (last

11

accessed September 25, 2019). Thus, Williams has presented evidence that he suffers from a "disorder of the spine" that results in "compromise of a nerve root [] or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A). Therefore, this aspect of Listing 1.04(A) appears to be satisfied.

To the extent the Listing requires not just a showing of nerve root compression, but "nerve root compression *characterized by* neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)," 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A) (emphasis added), there also is evidence in the record at least tending to suggest that these requirements are satisfied. For example, Williams complained on multiple occasions of pain radiating to his right and left lower extremities (Tr. 207, 221, 288, 302, 353, 355, 357, 361), as well as numbness and/or weakness in both lower extremities (Tr. 207, 269, 288, 302, 321, 416), which at least arguably evidences neuro-anatomic distribution of pain. In addition, the record contains evidence of a limited range of motion of Williams' spine. (*E.g.*, Tr. 252, 307, 330). There also is evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. (Tr. 330, 480). And, the record contains evidence of more than one positive straight-leg raising test. (Tr. 222, 252, 309). In summary, in light of the foregoing, the ALJ's conclusory finding that Williams failed to satisfy Listing 1.04(A) because he did not present "the required evidence of nerve root compression" (Tr. 23), is not supported by substantial evidence.

The Commissioner attempts to minimize the evidence discussed above, citing instead to records reflecting that Williams had full strength, intact sensation, normal reflexes, or denied numbness and tingling. (Doc. #18 at 21, 23 (citing Tr. 214, 217, 330, 369-70)). While the Court acknowledges this evidence and notes that, in some respects, the medical evidence is somewhat equivocal with respect to certain criteria of Listing 1.04(A), the problem is that the ALJ's entire Step Three analysis consists of a single conclusory – and, more importantly, apparently inaccurate – sentence that says only that Williams does not meet or medically equal Listing 1.04(A) "because the required evidence of nerve root compression … is not present." (Tr. 23). Indeed, although the record contains objective evidence of nerve root compression, decreased sensation, strength, and range of motion, and bilateral positive straight-leg raising tests, along with multiple complaints of radiating pain, the ALJ failed to provide any discussion as to why this evidence did not satisfy the criteria of Listing 1.04(A).[4]

For these reasons, the Court cannot conclude that the ALJ's Step Three determination is supported by substantial evidence. Regardless of how the ALJ might ultimately decide Williams' claim, at this juncture, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that

---

[4] The Commissioner also argues that "the ALJ's step-three finding is supported by Dr. Jackson-Hammond, who considered Listing 1.04 at the state agency level[.]" (Doc. #18 at 25 (citing Tr. 62)). The problem, however, is that Dr. Jackson-Hammond reviewed Williams' medical records in April 2016, before he fell again in November 2016; before he underwent a CT scan in January 2017 (which showed moderate canal stenosis at L4-L5 and was suspicious for pseudoarthrosis at L5-S1); and before any diagnosis of lumbar radiculopathy was made. Moreover, the ALJ did not mention Dr. Jackson-Hammond's opinion in reaching his Step Three conclusion.

Williams does not meet or medically equal[5] the relevant Listing.  And, if he does find that the evidence establishes that Williams meets or medically equals Listing 1.04(A), Williams would be presumptively entitled to benefits.  *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012).  Thus, the ALJ's error was not harmless, and remand is appropriate.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

### III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #18**) be **DENIED**, Williams' Motion for Summary Judgment (**Doc. #14**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: September 27, 2019                                s/David R. Grand
Ann Arbor, Michigan                                       DAVID R. GRAND
                                                          United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

---

[5] Even if Williams cannot demonstrate that he meets the criteria of Listing 1.04(A), he can still satisfy his burden at Step Three by proving that he has an impairment (or combination of impairments) that medically equals this Listing.  To do so, he must "present medical evidence that describes how [his] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004).  This means that Williams must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2019.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS

                Case Manager